UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KUSH, INC., | Case No. 2:20-CV-649 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| FRANK VAN VRANKEN, | |
| Defendant(s). | |

Presently before the court is plaintiff Kush, Inc.'s ("Kush") motion to remand to state court. (ECF No. 11). Defendant Frank Van Vranken, Jr. ("Van Vranken") filed a response (ECF No. 18), to which Kush replied (ECF No. 19).

Also before the court is Van Vranken's motion to dismiss (ECF No. 7). Kush filed a response (ECF No. 14), to which Van Vranken replied (ECF No. 15).

**I.    Background**

The instant action arises from a breach of contract. (ECF No 1-2). Both parties are in the medicinal and recreational marijuana business. *Id*. In October 2018, Kush and Van Franken, on behalf of Mendocino Green, LLC ("MG") entered into an agreement through which Kush would obtain a 60% membership interest in MG in exchange for conveying stock in Kush and its parent company, CBDS, to Van Vranken. *Id* at 5. Kush alleges that Van Vranken has, among other things, (1) refused to provide paperwork necessary to effect the transfer of the Kush Stock, (2) failed to initiate the addition of Kush to all MG ownership documentation, and (3) failed to take actions to add Kush to the county and state cannabis permits and licenses. *Id* at 5-7.

**James C. Mahan**
**U.S. District Judge**

Kush filed a complaint against Van Vranken in state court, alleging breach of contract. *Id.* at 1. Van Vranken removed this action asserting diversity of jurisdiction. (ECF No. 1). Van Vranken now moves to dismiss under 12(b)(6). (ECF No. 7).

**II.     Legal Standard**

*A.  Motion to remand*

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id*. (quoting 28 U.S.C. § 1446(b)(3)).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

*B. Motion to dismiss*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must

**James C. Mahan**
**U.S. District Judge**

- 3 -

> contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

*A. Remand*

For a United States district court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be completely diverse and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1098 (9th Cir. 2003). A removing defendant has the burden to prove by a preponderance of the evidence that the jurisdictional amount is met. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996).

Here, the parties do not dispute that removal was timely. Further, the parties do not dispute that there is complete diversity of citizenship. Kush is a Nevada corporation with its principal place of business in Nevada. Van Vranken is a California resident. Thus, the only issue before the court is the amount in controversy.

When determining whether jurisdiction is proper, a district court considers whether it is apparent from the face of the complaint that the amount in controversy exceeds $75,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997). When a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Sanchez*, 102 F.3d at 404 (9th Cir. 1996). To determine the monetary value of injunctive relief, the court can consider either the cost to the defendant or the monetary gain to the plaintiff. *See Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016).

Here, it is not facially apparent from the complaint that the amount in controversy has been met. In its complaint, Kush expressly stated that it was seeking "[d]amages in excess of $50,000," exempting itself from arbitration. (ECF No. 1-2). And in its motion to remand, Kush asserted that the damages in question are limited to "ministerial and administrative [costs that] in

James C. Mahan
U.S. District Judge

- 4 -

no way [approach] . . . $75,000." (ECF No. 11 at 4). But Kush has also stated its belief that if Van Vranken had performed his duties under the agreement, it "projected revenue of $1-2M by the second year of operation—with long term forecasts exceeding $10M per year." *Id*. at 3.

In light of Kush's inconsistent positions regarding the amount in controversy, this court applies judicial estoppel, an equitable doctrine that precludes a party from asserting one position and then later seeking an advantage by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamers Local 343*, 94 F.3d 597, 600–01 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The application of judicial estoppel not only bars the assertion of inconsistent positions in the same litigation, but it also bars litigants from asserting incompatible statements in different cases. *Rissetto*, 343, 94 F.3d, at 600–01.

Courts may invoke judicial estoppel because of "'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Id*. (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990)). Although there is not a "general formulation of principle" regarding when to apply judicial estoppel, the Supreme Court has articulated several factors for courts to consider. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id*. at 750–51.

Here, Kush initially conceded in its complaint that the damages it sought were in excess of $50,000. (ECF No. 1-2). To that end, Kush exempted this suit from arbitration in state court, presumably to its benefit. Kush also conceded in its complaint that it stood to gain $1 to $2 million in revenue by the second year of operation, had Van Vranken performed his duties under the agreement. *Id*. at 5. Kush's latest position, however, is that the value of its requested relief is

merely the cost of performing ministerial and administrative tasks, and that Van Vranken has the burden to prove the monetary value of performing these tasks exceeds $75,000.  (ECF No. 19 at 4).

Allowing Kush to change its position for its own benefit would grant it an unfair advantage and create the perception that either the state court or this court was misled.  Thus, this court finds that Kush is judicially estopped from asserting that the damages in question here solely involve ministerial and administrative costs.  To establish the monetary value of injunctive relief, the court may consider the monetary gain to the plaintiff.  *See Gonzales*, 840 F.3d at 648 (9th Cir. 2016). And Kush has already conceded that it stood to gain millions of dollars if the court grants the injunctive relief it seeks.  (ECF No. 1-2 at 5).  Accordingly, the court finds the amount in controversy is met.

*B.  Dismiss*

Van Vranken moves to dismiss Kush's breach of contract claim, arguing that the parties' agreement is void and unenforceable "because enforcing the [a]greement would require this court to enforce a contract for the operation and expansion of a marijuana-cultivation business, which is illegal under federal law, namely the Controlled Substances Act."  (EFC No. 7 at 5-6). Further, Van Vranken argues that the contract is illegal because its primary purpose was to advance Kush's "presence in the marijuana industry and to invest in and partner with existing companies to grow, cultivate, and sell marijuana."  (EFC No. 15 at 5).

Kush responds that enforcing the agreement would not require illegal conduct.  (ECF No. 14 at 3).  Although Kush admits that it is involved in the marijuana industry, it argues that the contract at issue merely involves the purchase of a membership in an LLC (Mendocino Green, which is also in the marijuana industry), and that the relief it seeks is to compel Van Vranken to perform ministerial tasks, such as providing documents and records, and to initiate the addition of Kush to the Mendocino Green ownership.  *Id*. at 2.  Kush also asks this court to order Van Vranken to "immediately initiate and assist with the addition of Kush to the current Mendocino County and California State cannabis permits and licenses.  (ECF No. 1-2 at 6).  Kush alleges that these are obligations that the agreement imposed on Van Vranken, which he failed to

**James C. Mahan**
**U.S. District Judge**

- 6 -

perform. *Id*. In summary, Kush's argument is that it seeks the enforcement of a marijuana-related contract between two marijuana companies, but its enforcement would not involve illegal conduct under federal law.

It is well established that, generally, a contract entered into in violation of federal law is unenforceable. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) ("There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law."). This general rule is based on the rationale of the public importance of discouraging such prohibited transactions. *Mann v. Gullickson*, No. 15-CV-03630-MEJ, 2016 WL 6473215, at *6 (N.D. Cal. Nov. 2, 2016).

The Controlled Substances Act ("CSA") prohibits the manufacture, distribution, and possession of marijuana. *See* 21 U.S.C. § 801. Anyone in any state who possesses, distributes, or manufactures marijuana for any purpose—or attempts or conspires to do so—is committing a federal crime. *United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016). Nonetheless, thirty-three states, four U.S. territories, and the District of Columbia have legalized the use of marijuana for medicinal purposes. Several have legalized the recreational use of marijuana as well.

The state of Nevada has legalized both medicinal and recreational marijuana. *See generally* Nev. Rev. Stat. § 453D. However, marijuana is still prohibited under federal law. *McIntosh*, 833 F.3d at 1176. As states legalized medical marijuana, federal policy regarding the enforcement of the CSA has been unclear. *Green Earth Wellness Center, LLC v. Atain Specialty Insurance Co.*, 163 F. Supp. 3d 821, 832 (D. Colo. 2016) (finding federal government has given "conflicting signals . . . regarding marijuana regulation and enforcement since 2009"). Further, the federal government's concern over the CSA's medical marijuana prohibition has waned in recent years, and the underlying policy purporting to support this prohibition has been undermined. *See Conant v. Walters*, 309 F.3d 629, 645 (9th Cir. 2002) ("The federal government's policy deliberately undermines the state by incapacitating the mechanism the state has chosen for separating what is legal from what is illegal under state law. Normally, of course, this would not be a problem, because where state and federal law collide, federal law prevails").

**James C. Mahan**
**U.S. District Judge**

- 7 -

Because of state legalization of marijuana, federal courts have been using a more nuanced approach to determine whether to enforce marijuana-related contracts when the illegality defense is asserted. *Ginsburg v. ICC Holdings, LLC*, No. 3:16-CV-2311-D, 2017 WL 5467688, at *9 (N.D. Tex. Nov. 13, 2017) (explaining that promissory notes financing a marijuana business are not automatically void because "federal courts do not take such a 'black-and-white' approach to enforceability").

Moreover, as more states regulate and legalize marijuana, the number of marijuana-related contractual disputes will inevitably rise. Using Van Vranken's black-and-white approach in such cases would set a precedent that allows remorseful parties—who willfully entered into such contracts—to evade their contractual obligations by going to federal court and asserting the federal prohibition of marijuana. This would undermine the fundamental reason why people willfully enter into contracts: to hold each party accountable to their promises. Further, as the court in *Mann v. Gullickson* held, voiding marijuana-related contracts and allowing parties to shield themselves from their contractual obligations would potentially induce illicit conduct, namely rampant nonpayment for services rendered pursuant to a contract. *Mann*, 2016 WL 6473215, at *9.

As a result, courts have recognized the need to enforce "illegal" contracts in order to avoid unjustly enriching a defendant or disproportionately penalizing a plaintiff. *See, e.g., Kenney v. Helix TCS, Inc.*, 939 F.3d 1106 (10th Cir. 2019) (holding that employers are not excused from complying with their employment obligations under federal law just because their business practices are federally prohibited under the CSA); *Ginsburg*, 2017 WL 5467688, at *9 ("[T]he illegality of contract defense involves a balancing of the pros and cons of enforcement, taking into account the benefits of enforcement that lie in creating stability in contract relations and preserving reasonable expectations and the costs in forgoing the additional deterrence of behavior forbidden by the statute."); *Asdourian v. Araj*, 696 P.2d 95, 105 (Cal. 1985) ("In compelling cases, illegal contracts will be enforced in order to 'avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.'" (citation omitted)).

**James C. Mahan**
**U.S. District Judge**

1  Questions of fact remain as to whether the alleged breach of the parties' agreement would
2  result in Van Vranken's unjust enrichment at Kush's expense.  Further, current public policy
3  does not discourage marijuana companies from entering into contracts in states where marijuana
4  is legal, thus undermining the policy rationale against enforcing "illegal" contracts in this
5  context. *See Green Earth Wellness Center*, 163 F. Supp. 3d at 832.

6  The court does not suggest that a contract formed with the intent to violate federal law is
7  necessarily enforceable. However, at the Rule 12(b)(6) stage, the court concludes that Van
8  Vranken has not established that the parties' agreement is void and unenforceable as a matter of
9  law.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion to remand to state court (ECF No. 11) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss (ECF No. 7) be, and the same hereby is, DENIED.

DATED June 19, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**